IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RONALD J. COATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-0843-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION REVERSING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Plaintiff appeals the Commissioner of Social Security's final decision to the extent that it denies his application for Supplemental Security Income ("SSI") benefits. The Commissioner's decision is reversed and the case is remanded for further proceedings.

I. STANDARD OF REVIEW

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in November 1977, completed the eighth grade, and has prior work experience as a house painter. He alleges he became disabled in late December 2009 as a result of injuries from a self-inflicted shotgun wound as well as various psychological conditions. An ALJ issued a partially favorable ruling, finding Plaintiff was disabled until December 27, 2010, but that Plaintiff's condition improved to the point that thereafter he was able to work. Plaintiff appealed, but the Commissioner filed a Motion asking the Court to reverse and remand the case for further proceedings. The Motion explained that the ALJ's hypothetical questions posed to the vocational expert ("VE") did not match the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"). The Commissioner further explained that on remand the ALJ would "obtain medical source statements and opinions from treating and/or examining physicians . . . reconsider Plaintiff's maximum residual functional capacity [and] obtain testimony from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Coates v. Astrue, No. 12-0958, Doc. # 13 at 1-2. With no opposition from Plaintiff, the Court granted the Commissioner's Motion and reversed and remanded "for reconsideration as set forth in the Commissioner's motion." Id., Doc. # 15. On remand, the Appeals Council noted the error that had led the Commissioner to ask for reversal and directed the ALJ, among other things, to "obtain medical source statements from treating and/or examining physicians regarding the claimant's limitations; reconsider the claimant's maximum RFC and provide appropriate rationale . . . in support of the assessed limitations . . . ." R. at 953. On remand, the ALJ did not obtain medical source statements from Plaintiff's past treating physicians.

The ALJ ultimately found Plaintiff's RFC permitted him to perform sedentary work with additional limitations, including one that he engage in no overhead reaching or repetitive reaching with his arms. The RFC also limited Plaintiff to "simple, unskilled work with no contact with the general public." R. at 865. These limitations were included in hypothetical question posed to the VE. R. at 916. In response to this hypothetical, the VE testified Plaintiff could perform work as a document preparer, addressing clerk, or weight tester. The VE was asked if this testimony was "consistent

2

with the Dictionary of Occupational Titles" and the VE answered "Yes, with supplementation based on my education, training, and experience to address any factors not specifically addressed by the DOT and SCO." R. at 917. The VE did not identify any specific inconsistencies between the RFC and the DOT, explain how her education, training and experience was employed to resolve any inconsistencies that might have existed, how any such inconsistencies were resolved, or how resolution of these issues affected the number of jobs that might be available.

### III. DISCUSSION

#### A.

Plaintiff contends the VE's testimony does not provide substantial evidence demonstrating Plaintiff can perform work in the national economy because there are apparent inconsistencies between his RFC and the DOT descriptions for the jobs identified by the VE. The Court agrees.

Social Security Ruling 00-4p states that the ALJ "has an affirmative responsibility to ask about any possible conflict" between the VE's testimony and the information contained in the DOT. "The ALJ [is] required not only to ask the expert whether there [is] a conflict, but also to obtain an explanation for any such conflict," and the failure to follow this requirement is error. Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007).

While the ALJ erred, the error requires reversal only if the Court concludes the error was not harmless. See id. (holding failure to follow SSR 00-4p harmless because there was no conflict between the VE's testimony and the DOT). Determining whether the error is harmless requires a comparison between the RFC and the DOT.

The parties agree that the three positions identified by the VE – document preparer, addressing clerk, and weight tester – all require the ability to "reach frequently;" that is, 1/3 to 2/3 of an eight hour day. Plaintiff's ability to reach was limited in two respects: he could not engage in "overhead reaching" and he could not engage in "repetitive reaching." This seems to present a potential conflict between the RFC and the DOT, and this conflict had to be acknowledged, explained, and resolved by eliciting

3

appropriate testimony from the VE. The Court views this situation as very similar to the one in Kemp v. Colvin, 743 F.3d 630 (8th Cir. 2014). There, the claimant's RFC precluded him from more than "occasional overhead reaching," creating a conflict with the DOT description that required "constant reaching" even though the description did not specify the "reaching" was "overhead." 743 F.3d at 632-33. "[T]he record d[id] not reflect whether the VE or the ALJ even recognized the possible conflict [and] the VE did not explain the possible conflict and the ALJ sought no such explanation." Id. at 633.[1] The fact that the VE in this case vaguely reassured the ALJ that she had relied on some combination of the DOT and her education, training and experience does not substitute for addressing (1) the possibility of a conflict when one appears to exist and (2) how the conflict (when one exists) affects the VE's testimony.[2]

## B.

Plaintiff complains that the ALJ did not comply with the Appeals Council's order requiring that Medical Source Statements be obtained from Plaintiff's treating physicians. The Commissioner essentially contends the ALJ did the best he could because Plaintiff was not seeing a treating physician at any time after the case was remanded and attempts to arrange for him to undergo a consultative examination failed for various reasons, so the ALJ solicited testimony from a medical expert who reviewed the file. Plaintiff puts a different spin on these events, (1) contending the ALJ never

---

[1] The Court relies on Kemp instead of the Tenth Circuit's decision in Gallegos v. Barnhart, 99 Fed. Appx. 222 (10th Cir. 2004) because (1) Eighth Circuit decisions are binding on this Court, (2) Gallegos is unpublished and thus of weaker precedential value, (3) Gallegos was decided before Kemp (and before Renfrow), and (4) in that case the relevant terms were actually defined in a manner that demonstrated there was no conflict between the RFC and the DOT.

[2] There is also not substantial evidence demonstrating Plaintiff can perform the job of weight tester (because he may not be able to perform the reading and mathematical requirements), but as the case is being reversed and remanded this issue can be addressed on remand if the VE again suggests Plaintiff can perform that job. Similarly, as the case is being remanded because of the failure to elicit the testimony required by SSR 00-04p and Renfrow, the Court deems it unnecessary to discuss Plaintiff's other arguments regarding the jobs identified by the VE.

4

tried to obtain medical source statements from his treating physicians and only learned that Plaintiff was not seeing a doctor at the hearing on remand and (2) insinuating the Commissioner's explanation is a post-hoc rationalization.

On the one hand, the Court is not sure the failure to elicit medical source statements constitutes a per se ground for reversal: the Court reviews the Record to confirm there is substantial evidence in the Record as a whole, and if that standard were met without medical source statements then the Court would likely affirm. On the other hand, the Commissioner's response does not explain why the ALJ could not have contacted Plaintiff's prior treating physicians and obtained medical source statements addressing Plaintiff's condition while they were treating him; presumably, such information would be relevant to the present inquiry.

*However*, . . . the case is being remanded for the unrelated reasons specified in Part III.A above. On remand, the ALJ should also attempt to obtain medical source statements from Plaintiff's treating physicians – even if he is no longer seeing them. Obviously, any such medical source statements will be relevant only to the time period the doctors were seeing Plaintiff – but that seems to be the time period that is important to this proceeding. The Court leaves it to the Commissioner's to determine whether a consultative examination at this juncture will provide relevant evidence. These efforts may require the ALJ to reformulate Plaintiff's RFC.

### C.

Plaintiff presents other arguments regarding the RFC formulation. The Court will address them now so they will not remain issues on remand.

Plaintiff first argues the ALJ erred in failing to take into account the third-party assessment of C. Renne, who was an employee of the Social Security Field Office. Renne interviewed Plaintiff in April 2010 and recorded his/her observations. There is no suggestion that Renne is a medical professional. The Court discerns no error in the ALJ's failure to discuss Renne's observations. First, Renne did not purport to describe any limitations or other information relevant to the RFC formulation. Second, at best Renne would have described Plaintiff's condition in April 2010 – but the ALJ found

5

Plaintiff to be disabled through December 27, 2010, and nothing Renne noted would bear on Plaintiff's condition after that date. (In fact, some of the observations – such as Plaintiff's use of a colostomy bag – were no longer true by December 27, 2010).

Plaintiff next contends the ALJ erred in declaring that Plaintiff could perform sedentary work without discussing each component of exertional activity (sitting, standing, etc.) on a function-by-function basis. This level of detail is not required in the written opinion. See Depover v. Barnhart, 349 F.3d 563, 567-68 (8th Cir. 2003). The Record reflects that the ALJ considered all of the evidence bearing on the issue, as well as all the components of activity that are relevant to determining a claimaint's exertional level.

Plaintiff argues his GAF scores in the 45 to 50 range demonstrate he is precluded from all work. Contrary to Plaintiff's assertion, however, the Eighth Circuit has not held that a person with a GAF score of 50 is automatically disabled. The GAF score may be relevant evidence, but it is not solely determinative.

Finally, Plaintiff alleges the ALJ erred in not according more weight to Dr. Holly Chatain's consulting opinion. Dr. Chatain saw Plaintiff in February 2014 and opined that Plaintiff suffers from a myriad of psychological problems. R. at 1133-35. The ALJ did not specifically identify the degree of weight he was affording to Dr. Chatain's opinion, but he concluded that her opinions "are inconsistent with the minimal psychological problems found in [Plaintiff's] ongoing mental health treatment records." R. at 872. Plaintiff argues, essentially, that "more weight" should have been accorded to Dr. Chatain's opinion, but he does not explain why. There is some evidence supporting her assessments – and there is also some evidence that detracts from her assessment. The Court cannot substitute its judgment of the facts for the ALJ's. E.g., Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003). Moreover, the Court is not sure what Dr. Chatain's report could add to the RFC formulation because she did not suggest any functional limitations. For instance: assuming without deciding that Plaintiff suffers from depression and anxiety, knowing this fact does not suggest any particular limitation that should be included in the RFC. Depression and anxiety are not automatically disabling conditions, and "suffering from anxiety" is not a functional limitation. The Court discerns no error.

## IV. CONCLUSION

The Court does not relish reversing this case for a second time and further prolonging the case's ultimate resolution. The Court also does not intend any aspersions on the ALJ, whose opinion demonstrates that he thoroughly considered the evidence before him. However, there is not substantial evidence in the Record as a whole to support the ALJ's decision that Plaintiff can perform the jobs of document preparer, addressing clerk, or weight tester, so the decision cannot stand. On the other hand, the Record also does not compel the conclusion that Plaintiff is incapable of performing work in the national economy. The Court is left with no choice but to reverse the final decision and remand for further proceedings.

The Commissioner's final decision is reversed and the case is remanded so that (1) medical source statements from Plaintiff's treating physicians (past and present) can be obtained and considered and (2) proper questions can be posed to the VE.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 30, 2015    UNITED STATES DISTRICT COURT